IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SHEARSON HAUGHTON                                               PLAINTIFF

V.                                          CIVIL ACTION NO. 20-cv-241-SA-DAS

JA-CO FOODS, INC d/b/a SONIC DRIVE-IN'S                  DEFENDANT

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Plaintiff Shearson Haughton submits her Response to the Motion for Summary Judgment filed by Defendant Ja-Co Foods, Inc. ("Sonic") (document # 36) as follows:

1.      Sonic has failed to carry its burden under Rule 56, Federal Rules of Civil Procedure, of establishing there is no genuine dispute regarding any material fact and that Sonic is entitled to judgment as a matter of law.

2.      Sonic's Motion and supporting Memorandum tell *Sonic's version* of events, but Ms. Haughton's deposition (Exhibit 3 hereto) tells a conflicting account of the material facts.

3.      In ruling upon a Motion for Summary Judgment, factual controversies are to be resolved in favor of the non-movant when both parties have submitted evidence of contradictory facts. When such contradictory facts exist, the

1

Court may "not make credibility determinations or weigh the evidence." *Pippen v. Tronox, LLC*, 359 F. Supp. 3d 440, 444 (N.D. Miss. 2019).

4. Where (as here) a Title VII claim of sexual harassment is against a supervisor, there are four elements of a hostile working environment claim:

(1) that the employee belongs to a protected class;

(2) that the employee was subject to unwelcome sexual harassment;

(3) that the harassment was based on sex; and

(4) that the harassment affected a "term, condition, or privilege" of employment.

5. As explained in Ms. Haughton's supporting Memorandum Brief, she has presented sufficient evidence to create a genuine issue of material fact as to each element.

6. To establish a Title VII claim for retaliation, Ms. Haughton must show (1) she was engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.

7. As explained in Ms. Haughton's supporting Memorandum Brief, she has presented sufficient evidence to create a genuine issue of material fact as to each element.

8. In an effort to discredit Ms. Haughton, Sonic contends that because she wrote *fiction* novels that contained descriptions of sexual acts, she could not be offended by having her manager repeatedly press his penis against her to simulate intercourse. That contention is without merit and provides no basis at all for a summary judgment motion.

9. Sonic complains that during her deposition, Ms. Haughton testified about other actions of Ellis to which she took offense. These facts were, Sonic says, not listed in her EEOC Charge.

10. The EEOC form she filled out was a simple form calling for only a brief factual summary. Courts have consistently held that the charges upon which complaints of discrimination are based should be construed liberally.

11. Further, those actions by Ellis reflect a course of conduct from which a jury could determine that Ms. Haughton's version of events is more believable than Ellis's denial.

12. These other facts to which Ms. Haughton testified at her deposition are, therefore, relevant and admissible, even though not specifically stated in her EEOC Charge.

13. As Sonic notes, isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment under Title VII case law.

14. Yet, an egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment.

15. As the Fifth Circuit has explained, "Title VII provides a legal remedy to victims who establish that the abusive conduct was severe *or* pervasive." *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (emphasis in original). A plaintiff need not prove both.

16. As discussed in Ms. Haughton's Memorandum Brief, the courts have held that (i) a single incident of physically threatening conduct could be sufficient to create an abusive environment, (ii) there is no minimum number of incidents required to establish a hostile work environment, (iii) direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment, and (iv) even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability.

17. Thus, the actions of Ellis meet the "extremely serious" test.

18. An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. It is undisputed that Ellis was Ms. Haughton's supervisor.

19. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.

20. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Industries., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

21. First of all, it is difficult to see the assault Ms. Haughton suffered as being anything other than a tangible employment action. It forced her to leave work and seek the help of the police for her safety.

22. Second, the evidence supports her claim that she was harassed at work, threatened with physical harm, and fired because she reported Ellis.

23. But, even if no tangible employment action (as the phrase is more commonly used) occurred *directly* as the result of Ellis's assault, the affirmative defense recognized by the Supreme Court would not be available here for two reasons.

24. First, although *Ellerth* speaks of the employer taking action to correct the harassing behavior, as explained above, the single act of assault by Ellis was

sufficiently severe to create a hostile work environment *in and of itself at that point in time*.

25. That Sonic may have tried to prevent its reoccurrence does not provide a defense to Ms. Haughton's claim that had already come into fruition.

26. Second, and along the same lines, it cannot be said that Ms. Haughton unreasonably failed to take advantage of any preventive or corrective actions. Again, the assault had already occurred, and nothing more had to happen to give rise to her Title VII claim. Further, she followed procedures and reported the assault to Human Resources.

27. Thus, Sonic has liability for the actions of Ellis.

28. Sonic contends Ms. Haughton's allegation was not corroborated. The simple response is that it does not have to be in order for her to pursue her claim. Her sworn testimony as to what happened is sufficient to create a jury issue.

29. As to her retaliation claim, as noted above, Ms. Haughton must come forward with proof that (1) she was engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.

30. There can be no doubt that her report to the police and Human Resources about Ellis was protected activity.

6

31. As to the second and third element, Ms. Haughton contends her co-workers and supervisor harassed her over her report about Ellis, tried to fight her, and her supervisor abruptly terminated her, all just a few days after she reported Ellis's assault. That is sufficient evidence of the second and third elements of a Title VII retaliation claim.

32. As to Ms. Haughton's common law claim of assault, it is based upon the events alleged in Paragraph 21 of the First Amended Complaint (and testified to by her in her deposition), namely:

> Approximately one week later, Ms. Haughton's manager, Shaqueeka Davis, and Alexis Ellis began to verbally harass and taunt Ms. Haughton. When Ms. Haughton refused to engage their taunts, Ms. Davis and Ms. Ellis attempted to fight Ms. Haughton. In order to de-escalate the situation, Ms. Haughton was required to contact law enforcement. Before law enforcement arrived, two of Ms. Haughton's co-workers had to restrain Ms. Davis and Ms. Ellis to prevent them from attacking Ms. Haughton.[1]

33. As to whether these employees were acting in the course and scope of their employment, a generalized assertion that intentional acts are always outside the scope of employment is without merit.

---

[1] The Complaint erroneously states that two co-workers restrained Ms. Davis and Ms. Ellis. Ms. Haughton clarified this at her deposition by testifying that it was her husband who stood in between the ladies, facing his wife with his arms up to block punches from Ms. Davis and Ms. Ellis. *See* Exhibit 3, Haughton Deposition, page 175, lines 7 – 15.

7

34. As discussed in detail in Ms. Haughton's supporting Memorandum Brief, under Mississippi law, included in the definition of "course and scope of employment" are tortious acts incidental to the authorized conduct.

35. A determination as to whether an employee's conduct was "incidental to" her employment "is highly fact sensitive such that it can have no fixed legal meaning." *Adams v. Cinemark USA, Inc.*, 831 So.2d 1156, 1159 (¶9) (Miss. 2002).

36. Thus, Sonic is not entitled to summary judgment on the common law assault claim.

37. In further support of this Response, Ms. Haughton submits:

Exhibit "1" - - Police Report

Exhibit "2" - - EEOC Charge

Exhibit "3" - - Ms. Haughton's Deposition

38. For all of these reasons, Defendant Ja-Co Foods, Inc.'s Motion for Summary Judgment should be denied.

Respectfully submitted, this the 30th day of December, 2021.

SHEARSON HAUGHTON

*/s/ S. Craig Panter*
S. Craig Panter

*/s/ Ronald E. Stutzman, Jr.*
Ronald E. Stutzman, Jr.

S. Craig Panter (MB #3999)
Panter Law Firm, PLLC
7736 Old Canton Road, Suite B (39110)
Post Office Box 2310
Madison, Mississippi 39130
Telephone: (601) 607-3156
Facsimile: (877) 442-7002
cpanter@craigpanterlaw.com

Ronald E. Stutzman, Jr. (MB #101454)
The Stutzman Law Firm, PLLC
106 Luckney Station Road, Suite B
Flowood, Mississippi 39232
Telephone: (769) 208-5683
Facsimile: (601) 202-3022
rstutzman@stutzmanlawfirm.com

## CERTIFICATE OF SERVICE

I, S. Craig Panter, an attorney for Shearson Haughton, certify that I have this day served a copy of this document by the court's electronic filing system which will send a copy to all counsel of record.

This the 30th day of December, 2021.

/s/ *S. Craig Panter*
S. Craig Panter